UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ARVEL WILMARK WILSON,

                  Petitioner,

      v.

WILLIAM BARR, United States Attorney
General, et al.,

             Respondents.

---

**DECISION AND ORDER**

1:19-CV-01364 EAW

## INTRODUCTION

*Pro se* petitioner Arvel Wilmark Wilson ("Petitioner"), an immigration detainee currently detained at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, seeks a *writ of habeas corpus* pursuant to 28 U.S.C. § 2241. (Dkt. 1). Petitioner argues that his continued detention is unconstitutional and seeks immediate release or, in the alternative, a bond hearing. (*Id.* at 19). For the reasons that follow, the Court denies Petitioner's request for immediate release, but finds that Petitioner is entitled to an individualized bond hearing at which the Government bears the burden of proving by clear and convincing evidence that Petitioner poses either a risk of flight or a danger to the community.

## BACKGROUND

Petitioner is a native and citizen of Jamaica. (Dkt. 11-1 at ¶ 5). On June 24, 1999, Petitioner was admitted to the United States as a non-immigrant P3 Artist or Entertainer coming to perform, teach, or coach in a Culturally Unique Program, with authorization to

remain in the United States for a temporary period not to exceed May 25, 2000.  (*Id.*).
Petitioner remained in the United States beyond May 25, 2000, without authorization from
the Immigration and Naturalization Service or its successor, Department of Homeland
Security ("DHS").  (*Id.*).

On December 26, 2011, Petitioner was arrested and charged with attempted murder.
(*Id.* at ¶ 6).  On December 28, 2011, an Immigration Detainer was lodged against Petitioner
at the Riker's Island Correctional Facility, where he was incarcerated.  (*Id.* at ¶ 7).  On
December 30, 2011, Petitioner was indicted on five counts.  (*Id.*).  On or about April 25,
2014, Petitioner pleaded guilty to assault in the first degree.  (*Id.* at ¶ 8).  Petitioner was
sentenced to eight years of imprisonment and five years of post-release supervision.  (*Id.*).

On or about March 10, 2016, DHS identified Petitioner as a Level 1 Criminal Alien
subject to removal from the United States due to his aggravated felony conviction.  (*Id.* at
¶ 9).  On March 16, 2016, an Immigration Detainer was lodged against Petitioner at the
Cape Vincent Correctional Facility, where he was incarcerated.  (*Id.* at ¶ 10).  That same
day, Petitioner was placed in immigration removal proceedings and served with a Notice
to Appear ("NTA") charging Petitioner as removable pursuant to 8 U.S.C. § 1227(a)(1)(B),
(a)(2)(A)(iii).  (*Id.* at ¶ 11).

Petitioner's hearing before an immigration judge ("IJ") was scheduled for May 18,
2016, but was rescheduled to July 20, 2016, due to the unavailability of the IJ.  (*Id.* at ¶ 12).
On July 20, 2016, Petitioner appeared *pro se* before an IJ for an initial master calendar
hearing.  (*Id.* at ¶ 13).  The proceedings were continued on October 19, 2016, to allow
Petitioner an opportunity to seek legal representation.  (*Id.*).  On October 19, 2016,

Petitioner appeared *pro se* and admitted the allegations in the NTA.  (*Id.* at ¶ 14).  The IJ sustained the charges of removability.  (*Id.*).  The proceedings were adjourned until December 14, 2016, to allow Petitioner an opportunity to file an application for relief from removal.  (*Id.*).

On December 14, 2016, Petitioner appeared before an IJ for a master calendar hearing.  (*Id.* at ¶ 15).  Petitioner informed the IJ that Petitioner's wife had filed an I-130[1] petition with U.S. Citizenship and Immigration Services ("USCIS").  (*Id.*).  The proceedings were adjourned until January 18, 2017, to allow Petitioner an opportunity to submit proof of the filing of the I-130 petition.  (*Id.*).  On January 18, 2017, Petitioner appeared before an IJ for a master calendar hearing, which was adjourned until March 15, 2017, to allow Petitioner additional time to submit proof of the filing of the I-130 petition.  (*Id.*).

On February 14, 2017, an I-130 petition was filed on behalf of Petitioner.  (*Id.* at ¶ 16).  Due to a snowstorm, the March 15, 2017, hearing was rescheduled for April 19, 2017.  (*Id.*).  On April 19, 2017, Petitioner appeared before the IJ for a master calendar hearing.  (*Id.* at ¶ 18).  Due to the pending adjudication of the I-130 petition by USCIS, Petitioner's immigration proceedings were continued five times.  (*Id.*).  On April 6, 2018, USCIS denied the I-130 petition filed on behalf of Petitioner.  (*Id.* at ¶ 19).  On April 18,

---

[1]     An I-130 Petition for Alien Relative is used by a U.S. citizen or a lawful permanent resident seeking "to establish his or her relationship with an eligible relative who wishes to come to or remain in the United States permanently and get a Permanent Resident Card (also called a Green Card)."  U.S. Citizenship and Immigration Services, https://www.uscis.gov/i-130 (last visited Apr. 27, 2020).

2018, Petitioner indicated to the IJ that he was appealing the denial of the I-130 petition, but Petitioner did not have evidence of the appeal.  (*Id.* at ¶ 20).  The IJ adjourned the hearing until May 16, 2018, to determine whether Petitioner was actively appealing the denial of the I-130 petition.  (*Id.*).

On May 16, 2018, Petitioner appeared before the IJ for a master calendar hearing.  (*Id.* at ¶ 21).  The IJ adjourned the hearing to allow Petitioner time to determine whether he had any avenues to seek relief from removal, including whether he could seek a re-determination of his I-130 petition.  (*Id.*).  The IJ also directed DHS to file a brief regarding the aggravated felony allegation in the NTA and adjourned the proceedings until June 27, 2018.  (*Id.*).  On or about June 6, 2018, DHS filed the brief.  (*Id.*).

On June 27, 2018, Petitioner appeared before the IJ for a master calendar hearing.  (*Id.* at ¶ 22).  The proceedings were adjourned until August 15, 2018, to give Petitioner an opportunity to respond to DHS's brief and to file an application for relief from removal.  (*Id.*).  On August 13, 2018, Petitioner filed a Form I-589 Application for Asylum and Withholding of Removal, asserting a claim for a deferral of removal under the United Nations Convention against Torture ("CAT").  (*Id.* at ¶ 23).  On August 15, 2018, Petitioner appeared before the IJ for a master calendar hearing.  (*Id.* at ¶ 24).  The proceedings were continued on October 24, 2018, for an individual merits hearing, which was later rescheduled for November 19, 2018.  (*Id.*).

On November 1, 2018, Petitioner was placed in DHS custody upon his release from the New York State Department of Corrections and Community Supervision (*id.* at ¶ 26), and DHS determined that Petitioner's custody should continue pending a final

- 4 -

administrative determination of his immigration case (*id.* at ¶ 27).  On November 19, 2018, Petitioner's immigration proceeding was rescheduled for December 10, 2018, and was then adjourned until January 28, 2019.  (*Id.* at ¶ 28).

On January 28, 2019, Petitioner appeared, with counsel, before the IJ for a master calendar hearing.  (*Id.* at ¶ 29).  The hearing was rescheduled for February 27, 2019, at the request of Petitioner's counsel so that he could file an amended  Form I-589 and investigate the status of Petitioner's previously filed I-130 petition.  (*Id.*).  Petitioner's counsel filed an amended Form I-589 and on February 27, 2019, Petitioner appeared, with counsel, before the IJ.  (*Id.* at ¶¶ 30, 31).  The IJ proposed scheduling a merits hearing to consider the amended Form I-589 on April 5, 2019, but because Petitioner's counsel requested additional time, the proceedings were scheduled for April 16, 2019.  (*Id.* at ¶ 31).

On April 16, 2019, Petitioner appeared, with counsel, before an IJ for an individual merits hearing.  (*Id.* at ¶ 32).  The IJ found that Petitioner had failed to meet his burden under the CAT, denied Petitioner's application for relief from removal, and ordered Petitioner removed to Jamaica.  (*Id.*).  On May 15, 2019, Petitioner appealed the IJ's order of removal to the Board of Immigration Appeals ("BIA").  (*Id.* at ¶ 33).  On November 27, 2019, the BIA dismissed Petitioner's appeal, finding no clear error in the IJ's factual determination that Petitioner did not meet his burden under the CAT.  (*Id.* at ¶ 35).

On December 5, 2019, DHS sent a presentation packet to the Embassy of Jamaica in Washington, D.C., requesting that a travel document be issued for Petitioner's removal.  (*Id.* at ¶ 36).  On December 6, 2019, Petitioner filed a petition for review of the BIA's November 27, 2019, order, as well as a motion for stay of removal, with the United States

Court of Appeals for the Second Circuit.  Petition for Review, *Wilson v. Barr*, No. 19-4058, Dkt. 1 (2d Cir. Dec. 6, 2019); Motion for Stay of Removal, *Wilson v. Barr*, No. 19-4058, Dkt. 3 (2d Cir. Dec. 6, 2019).  Both motions remain pending before the Second Circuit.

## DISCUSSION

### I.   Jurisdiction

The federal habeas corpus statute gives district courts jurisdiction to hear immigration-related detention cases.  *See* 28 U.S.C. § 2241(c)(3); *Demore v. Kim*, 538 U.S. 510, 517-18 (2003) (holding federal courts have jurisdiction to review challenges to pre-removal detention); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" in immigration cases).  District courts do not have jurisdiction over challenges to the legality of final orders of deportation, exclusion, and removal; jurisdiction to review such challenges rests exclusively in circuit courts.  *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231, § 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . which circuit courts alone can consider.").

### II.   Named Respondents

The Government contends that Jeffrey J. Searls, Officer in Charge of the BFDF, is the only respondent with immediate custody over Petitioner, and consequently the only proper respondent.  (Dkt. 12 at 31).  The Court agrees with the Government and dismisses all respondents except for Jeffrey Searls from the instant action.  *See Rodriguez v. Barr*,

No. 6:18-cv-06757-MAT, 2019 WL 2192516, at *3 n.3 (W.D.N.Y. May 21, 2019) ("Searls is the only proper respondent in this § 2241 proceeding as he is the person with direct control over Petitioner's detention." (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("[I]n habeas challenges to present physical confinement . . . the default rule is that the proper respondent is the warden of the facility where the prisoner is being held[.]"))), *reconsideration denied*, 2019 WL 6037275 (W.D.N.Y. Nov. 14, 2019); *Hassoun v. Sessions*, No. 18-CV-586-FPG, 2019 WL 78984, at *7 (W.D.N.Y. Jan. 2, 2019) ("The majority view in the Second Circuit requires the 'immediate custodian,' generally the prison warden, to be named as a respondent in 'core' immigration habeas proceedings— *i.e.*, those challenging present physical confinement." (quotation omitted)); *see also S.N.C. v. Sessions*, 325 F. Supp. 3d 401, 407 (S.D.N.Y. 2018) ("If, on the other hand, the petition challenges a broader form of legal, non-physical custody, then the proper respondent is the person with legal authority to effect that custody.").

## III.   **Statutory Basis for Petitioner's Detention**

As an initial matter, the Court must determine whether Petitioner is presently detained pursuant to § 1226(c) or § 1231. "The distinction between § 1226 and § 1231 essentially comes down to whether an alien is subject to a final order of removal." *Enoh v. Sessions*, 236 F. Supp. 3d 787, 793 (W.D.N.Y. 2017), *appeal withdrawn*, No. 17-1236, 2017 WL 6947858 (2d Cir. Dec. 7, 2017). Section 1231 of the INA addresses detention of "immigrants in the 'removal period,' the term used in the statute to describe the 90-day period following an order of removal during which 'the Attorney General shall remove the alien.'" *Hechavarria v. Sessions*, 891 F.3d 49, 54 (2d Cir. 2018) (quoting 8 U.S.C.

§ 1231(a)(1)(A)).  The Supreme Court determined that § 1231 "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.  It does not permit indefinite detention."  *Zadvydas*, 533 U.S. at 689.  The removal period begins "on the latest of the following": (1) "[t]he date the order of removal becomes administratively final"; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; and (3) "[i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement."  8 U.S.C. § 1231(a)(1)(B).

In 2012, DHS and the Second Circuit entered into a forbearance agreement wherein the Government "has assured that removal will not occur" while the detainee has a petition for review pending before the Second Circuit.  *In re Immigration Petitions for Review Pending in U.S. Court of Appeals for Second Circuit*, 702 F.3d 160, 162 (2d Cir. 2012).  In this Circuit, there is an open question "as to whether an alien, like [Petitioner], who has . . . filed a stay motion which has not been adjudicated by the Court of Appeals, but whose removal has been effectively stayed by operation of the forbearance agreement between that court and DHS, is detained under § 1231(a) or § 1226."  *Gomez v. Whitaker*, No. 6:18-cv-06900-MAT, 2019 WL 4941865, at *4 (W.D.N.Y. Oct. 8, 2019).  The overwhelming majority of courts in this Circuit, including this Court in *Ranchinskiy v. Barr*, 422 F. Supp. 3d 789, 795-96 (W.D.N.Y. 2019), have found that the forbearance agreement amounts to a "court order[ed] stay of the removal of the alien" and that detainees with a pending petition review are detained pursuant to § 1226.  *See Sankara v. Whitaker*, No. 18-CV-

1066, 2019 WL 266462, at *4 (W.D.N.Y. Jan. 18, 2019) (collecting cases); *see, e.g.*, *Yusuf v. Edwards*, No. 18-CV-3605 (GBD) (BCM), 2019 WL 4198798, at *5 & n.4 (S.D.N.Y. July 2, 2019) ("[B]ecause of the government's forbearance policy, an alien who files a PFR and a stay motion in the Second Circuit obtains 'the functional equivalent of a stay order,' such that § 1231 no longer governs his detention and he 'may not be denied a bond hearing on that basis.'" (collecting S.D.N.Y. cases)).

The Court recognizes that not all courts agree. *See, e.g., Narain v. Searls*, No. 19-CV-6361 (CJS), 2020 WL 95425, at *4 (W.D.N.Y. Jan. 8, 2020). Nonetheless, for the reasons that this Court set forth in more detail in *Ranchinskiy*, 422 F. Supp. 3d at 795-96, including the Second Circuit's reasoning in *Hechavarria*, 891 F.3d at 54, this Court concludes that the forbearance agreement amounts to a court ordered stay of removal and accordingly, Petitioner is detained pursuant to § 1226(c).

## IV.   Petitioner's Claims

The Petition challenges the constitutionality of Petitioner's continued detention under § 1226(c). (Dkt. 1). In particular, Petitioner contends that his detention violates his right to due process. Petitioner seeks immediate release or, in the alternative, a bond hearing. (*Id*. at 8). For the reasons that follow, the Court denies Petitioner's request for immediate release, but finds that Petitioner has been deprived of procedural due process and is thus entitled to an individualized bond hearing at which the Government bears the burden of proving by clear and convincing evidence that Petitioner poses either a risk of flight or a danger to the community.

In prior decisions, this Court has set forth the history regarding the constitutionality of the mandatory detention provided for by § 1226(c), in the wake of the Supreme Court's decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), including the distinctions between substantive and procedural due process challenges, and it will not repeat that discussion here. *See, e.g., Ranchinskiy*, 422 F. Supp. 3d at 793-94. Rather, the Court will turn directly to Petitioner's substantive and procedural due process challenges.

### A.    Substantive Due Process

"[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings." *Doherty v. Thornburgh*, 943 F.2d 204, 209 (1991). "It is axiomatic, however, that an alien's right to be at liberty during the course of deportation proceedings is circumscribed by considerations of the national interest." *Id.* If the infringement on an alien's "liberty interest results from a proper exercise of discretion," then a prolonged detention "is not conduct that goes beyond the range of government activity permitted by the Constitution." *Id.* at 211. "[D]etention of an alien 'once removal is no longer reasonably foreseeable' . . . violates the Due Process Clause." *Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003). "[O]nce the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

In the instant matter, Petitioner has failed to demonstrate that his removal is not reasonably foreseeable. To the contrary, Petitioner would be removed if he withdrew his petition for review presently before the Second Circuit. Petitioner "may not rely on the

extra time resulting" from his appeal "to claim that [his] prolonged detention violates substantive due process." *Doherty*, 943 F.2d at 211; *Thompson v. Lynch*, No. 16 CV 6608 (CJS), 2017 WL 344970, at *7 (W.D.N.Y. Jan. 24, 2017) ("Unless and until the circuit court vacates the removal order or otherwise rules in petitioner's favor on the petition for review, petitioner remains a criminal alien subject to removal and subject to lawful mandatory detention in DHS custody under the authority of the INA."). Accordingly, the Court denies the portion of the Petition that rests on substantive due process grounds as well as Petitioner's associated request for immediate release.

**B.     Procedural Due Process**

For the reasons previously articulated in other decisions by this Court, *see, e.g.,* *Ranchinskiy*, 422 F. Supp. 3d at 797; *Constant v. Barr*, 409 F. Supp. 3d 159, 167-68 (W.D.N.Y. 2019), this Court agrees with the overwhelming majority of courts in this Circuit that the multi-factor approach articulated by the court in *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *1 (S.D.N.Y. May 23, 2018), *appeal withdrawn*, No. 18-2591, 2019 WL 4137822 (2d Cir. May 7, 2019), and other courts within this Circuit, is a useful tool for addressing procedural due process claims for aliens detained pursuant to § 1226(c) in the immigrant habeas context. Those factors are as follows:

(1) the length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal

detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion.[2]

*Cabral v. Decker*, 331 F. Supp. 3d 255, 261.

As to the first factor, Petitioner has been detained in immigration custody since November 2018. Thus, "[t]he first and 'most important' . . . factor weighs heavily in favor of granting the petition." *Bermudez Paiz v. Decker*, No. 18-CV-4759 (GHW) (BCM), 2018 WL 6928794, at *13 (S.D.N.Y. Dec. 27, 2018) (citation omitted). "[C]ourts in this Circuit have generally been skeptical of prolonged detention of removable immigrants, without process, lasting over six months," *Lett v. Decker*, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018) (quoting *Lopez v. Sessions*, No. 18 Civ. 4189 (RWS), 2018 WL 2932726, at *14 (S.D.N.Y. June 12, 2018)), *appeal filed*, No. 18-3714 (2d Cir. Dec. 11, 2018), and "courts have found detention shorter than a year to be unreasonably prolonged as part of procedural due process analysis," *Rosado Valerio v. Barr*, No. 19-CV-519, 2019 WL 3017412, at *4 (W.D.N.Y. July 10, 2019) (collecting cases), *appeal dismissed*, No. 19-2848, 2020 WL 1126526 (2d Cir. Jan. 9, 2020).

The record before the Court shows that Petitioner has been detained for roughly 17 months without receiving an individualized determination as to whether he should remain confined for the duration of his immigration proceedings, and that the initial determination he did receive did not provide him with meaningful process. Indeed, while the record

---

[2] This is not to suggest that other factors cannot be considered by a court in the appropriate case. In other words, it would be inconsistent with the flexible nature of due process, *Jennings*, 138 S. Ct. at 852, to restrict the analysis to hard-and-fast factors with no ability to adapt those factors to the particular facts of a case.

before the Court shows Petitioner requested that an IJ review the initial custody determination (Dkt. 11-3 at 28), the record does not show that Petitioner ever received such review or that he had any opportunity to advocate for his release from custody while his immigration proceedings were ongoing.  Consequently, this factor weighs heavily in Petitioner's favor.  *See, e.g.*, *Bermudez Paiz*, 2018 WL 6928794, at *30 (first factor weighed heavily in petitioner's favor where petitioner had been detained for more than 16 months since his parole had been revoked); *Joseph v. Decker*, No. 18-CV-2640(RA), 2018 WL 6070567, at *11 (S.D.N.Y. Nov. 21, 2018) (first factor weighed in petitioner's favor where petitioner had been detained for over 14 months).

Respondent contends that the second factor in the analysis—which party is responsible for the delay—undercuts a finding of an unreasonable length of detention in Petitioner's case because "Petitioner has caused significant delays in his immigration case by either pursuing or suggesting to the IJ that he was pursuing various avenues for relief." (Dkt. 12 at 27).  For procedural due process claims, when "considering whether [Petitioner] or the Government is responsible for the prolonged proceedings, the Court 'may examine the record to determine whether the alien sought repeated or unnecessary continuances, or filed frivolous claims and appeals.'"  *Vallejo v. Decker*, No. 18-CV-5649, 2018 WL 3738947, at *4 (S.D.N.Y. Aug. 7, 2018) (quoting *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1218 (11th Cir. 2016), *vacated on other grounds*, 890 F.3d 952 (11th Cir. 2018)); *see Sajous*, 2018 WL 2357266, at *11 ("[A]liens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would not otherwise get under the statute." (quoting *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469,

- 13 -

476 (3d Cir. 2015))).  "[C]ourts should keep in mind that 'aliens should not be punished for pursuing avenues of relief and appeals[,]' but evidence of bad faith delays may cut against them."  *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *7 (S.D.N.Y. July 25, 2018) (quotation omitted), *appeal withdrawn*, No. 18-2824, 2019 WL 1377025 (2d Cir. Feb. 5, 2019).

In this case, the record supports a conclusion that a significant portion of the delay between July 2016 (when Petitioner requested a continuance to seek counsel) and April 2019 (when the merits hearing before the IJ began), can be attributed to requests for adjournment made by Petitioner.  However, the record does not show that Petitioner was engaging in bad faith delay tactics.  To the contrary, Petitioner's requests for continuances were made to obtain counsel, to file an application for relief from removal, to submit proof of his wife's filing of an I-130 petition, and to file a Form I-589.  (Dkt. 11 at ¶¶ 11-21).  Further, the record indicates that the proceedings were then adjourned multiple times due to the pending adjudication of the I-130 petition (*id.* at ¶ 16), and due to Petitioner's counsel's requests to file an amended Form I-589 and to investigate the status of Petitioner's I-130 petition (*id.* at ¶ 27).  As such, it would not be appropriate to utilize these requests for adjournment to penalize Petitioner.  *See, e.g.*, *Sopo*, 825 F.3d at 1218; *Vallejo*, 2018 WL 3738947, at *4; *Hernandez*, 2018 WL 3579108, at *7; *Sajous*, 2018 WL 2357266, at *11.  On the other hand, it is apparent that Petitioner's continued detention and stay of removal has been triggered by the pending appeal, although the Court cannot state that Petitioner's appeal is frivolous or in bad faith.  Thus, while much of the delay rests

with Petitioner's litigation strategy, the Court cannot conclude that that strategy has been employed for purposes of creating delay.

As for the third factor, Petitioner has asserted defenses to removal in his immigration proceedings. He has asked for relief under the CAT and has applied for asylum. (Dkt. 11-1 at ¶ 23). Respondent argues that this defense is unlikely to be successful because the Second Circuit lacks jurisdiction to make factual determinations in the deferral of removal context and because Petitioner cannot meet the high standard of proof necessary to achieve eligibility for deferral of removal under the CAT. (Dkt. 12 at 28-29). However, "[t]he Court need not inquire into the strength of [Petitioner's] defenses—it is sufficient to note their existence and the resulting possibility that the Petitioner will ultimately not be removed, which diminishes the ultimate purpose of detaining the Petitioner pending a final determination as to whether he is removable." *Sajous*, 2018 WL 2357266, at *11; *see Cabral*, 331 F. Supp. 3d at 261-62 (finding the third factor weighed in petitioner's favor because he asserted several defenses to his removal "including asylum . . . and relief under the Convention Against Torture"); *Perez v. Decker*, No. 18-CV-5279 (VEC), 2018 WL 3991497, at *5 (S.D.N.Y. Aug. 20, 2018) ("Petitioner has made a claim for asylum that could be a defense to his removal, again tilting the scales toward his unreviewed detention being unreasonable."). Accordingly, this factor weighs in Petitioner's favor.

The fourth factor on the other hand weighs against Petitioner—his detention has not been longer than the time that he spent in prison for the crime that made him removable. The record indicates that Petitioner was incarcerated for over seven years for committing

assault in the first degree, but has been civilly detained for roughly 17 months. (*See* Dkt. 11-1 at ¶ 7; Dkt. 11-2 at 2; Dkt. 12 at 25).

The fifth factor—whether the detention facility is meaningfully different from a penal institution for criminal detention—is at best neutral. Respondent has submitted a declaration describing the conditions of confinement at the BFDF as not consisting of "the same level of restrictions typical for someone held at a prison." (Dkt. 11-7 at ¶ 7). However, even with the amenities, such as entertainment, a microwave, and a juice bar, detailed in that declaration (*id.* at ¶¶ 8-9), the reality is that the facility houses individuals against their will with various restrictions on their freedom of movement. Thus, while perhaps not akin to a maximum-security prison, for many individuals, even crediting the description set forth in the declaration, the facility does not seem meaningfully different from at least a low-security penal institution for criminal detention.

The sixth factor, the nature of the crime Petitioner was convicted of, weighs against Petitioner. In April 2014, Petitioner pleaded guilty to a violent crime—assault in the first degree with intent to cause serious injury with a weapon. *See Constant*, 409 F. Supp. 3d at 171 (finding sixth factor weighed against the petitioner where he had pleaded guilty to committing the violent crimes of manslaughter and attempted assault, as well as trafficking firearms). However, the Court notes that while past criminal convictions, particularly of violent offenses, are critical to evaluating a petitioner's risk of danger to the community, "[t]he process due even to excludable aliens requires an opportunity for an evaluation of the individual's *current* threat to the community and his risk of flight." *Hechavarria*, 358 F. Supp. 3d at 240 (quoting *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 398 (3rd Cir. 1999)).

As such, although this factor weighs against Petitioner, it is tempered by the lack of evidence in the record showing that Petitioner poses a current threat to the community, and by the fact that any additional evidence of potential danger could be presented and evaluated in appropriate bond proceedings.

The final factor, whether Petitioner's detention is near conclusion, arguably weighs in Petitioner's favor. The merits of Petitioner's petition for review have not yet been briefed before the Second Circuit, and it is unclear when the Second Circuit will issue its decision. *See Dukuray v. Decker*, No. 18 CV 2898 (VB), 2018 WL 5292130, at *5 (S.D.N.Y. Oct. 25, 2018) ("[T]here is 'significant reason to believe that [petitioner's detention] will continue . . . because . . . he would remain detained throughout the course of an appeal by either side.'" (second alteration in original) (quoting *Lett*, 346 F. Supp. 3d at 387)).

Thus, the Court acknowledges that some of the factors favor Petitioner and some do not. However, on balance and particularly in view of the length of the detention and the circumstances surrounding that detention, the Court finds that Petitioner's continued detention without a bond hearing is constitutionally unjustified. *See Arce-Ipanaque v. Decker*, No. 19-CV-1076 (JMF), 2019 WL 2136727, at *2 (S.D.N.Y. May 15, 2019) ("At bottom, the minimal burden that a bond hearing would place on the Government is far outweighed by [the petitioner]'s interest in ensuring that his continued detention is justified." (quotation and original alteration omitted)).

### C.     Process Due to Petitioner

It is well established within this Circuit that when a court determines the length of a petitioner's detention pursuant to § 1226(c) is unjustified, due process requires that he be given a bond hearing where an individualized determination can be made as to whether he should remain confined for the duration of his immigration proceedings.  *See, e.g.*, *Bermudez Paiz*, 2018 WL 6928794, at \*14 (holding petitioner was entitled to a bond hearing after finding his detention was unreasonably prolonged); *Cabral*, 331 F. Supp. 3d at 262-63 (same); *Hernandez*, 2018 WL 3579108, at \*10 (same).  "The only remaining question concerns the burden of proof at the bond hearing."  *Bermudez Paiz*, 2018 WL 6928794, at \*15.

Prior to *Jennings*, the Second Circuit required in bond hearings that "the government establish[ ] by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community."  *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015).  In *Jennings*, the Supreme Court held "that § 1226 itself does not require the government to carry the clear and convincing evidence burden. . . .  However, the Supreme Court left open the question of what the Constitution requires for aliens detained pursuant to § 1226(c)."  *Cabral*, 331 F. Supp. 3d at 262 n.6 (citing *Jennings*, 138 S. Ct. at 847, 851).  The vast majority of courts in this Circuit to have considered this issue, including this Court, have found that due process requires that an individual such as Petitioner is entitled to a bond hearing where the government must demonstrate dangerousness or flight risk by clear and convincing evidence.  *See, e.g., Ranchinskiy*, 422 F. Supp. 3d at 800.

Additionally, as the Court has previously noted, both due process and BIA precedent require the IJ to consider ability to pay and alternative conditions of release in setting bond. *See Abdi v. Nielsen*, 287 F. Supp. 3d 327, 335-39 (W.D.N.Y. 2018).

## **CONCLUSION**

For the foregoing reasons, the Petition (Dkt. 1) is dismissed as to all Respondents except Jeffrey Searls, and the Petition is granted solely to the extent that the Court orders Respondent Searls to afford Petitioner an individualized bond hearing consistent with the procedures outlined in this Decision and Order within 14 days of its entry.  The Clerk of Court is instructed to close this case.  If Petitioner requests a continuance that results in a bond hearing date outside the 14-day deadline set forth above, such a continuance will be in compliance with the instant Decision and Order, as long as the new date falls within a reasonable time period.  Respondent Searls is directed to file a status update with the Court within three (3) days of the date of Petitioner's bond hearing regarding the outcome of the hearing, or on or before May 29, 2020, whichever date is earlier.  The Clerk of Court is instructed to close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:      May 1, 2020
             Rochester, New York

- 19 -